Filed 12/1/15  P. v. Beltran CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAIME BELTRAN,<br><br>    Defendant and Appellant. | F069219<br><br>(Super. Ct. No. F13906164)<br><br>**OPINION** |

-----

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  W. Kent Hamlin, Judge.

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

-----

[*]        Before Poochigian, Acting P.J., Detjen, J. and Franson, J.

Jamie Beltran was convicted of the shooting death of Eduardo Diaz Reynoso. He was sentenced to a term of 50 years to life. Appellate counsel advised this court she could not identify any arguable issues in this appeal. After a thorough review of the record, we agree. Accordingly, we will affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

The information charged Beltran with one count of first degree murder (Pen. Code, § 187, subd. (a)),[1] and alleged he personally discharged a firearm causing the death of Reynoso (§ 12022.53, subd. (d)).

Prior to the preliminary hearing, Beltran made a motion to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806. Beltran completed a waiver form which advised him of the consequences of the decision, and the trial court also reviewed his rights with him. After the preliminary hearing, the trial court again advised Beltran to allow appointed counsel to represent him. Beltran affirmed his desire to represent himself.

Santana Santos Garcia testified he had been drinking beer with Reynoso on the day of the murder under a tree near the market. At one point a man carrying a weapon approached and shot Reynoso. Before killing Reynoso, the man said something like "God, forgive me." The man then shot Reynoso more than once. Garcia claimed he did not see the shooter's face, but only the end of the gun. Garcia was a very difficult and emotional witness. He claimed he could not remember much of that day because he was intoxicated.

Beltran asked Garcia on cross-examination if he was sure that Beltran was the shooter. Garcia testified that he had never pointed Beltran out, and he did not know if he was the shooter. This question was the only cross-examination by Beltran during the entire trial.

---

[1] All statutory references are to the Penal Code.

Deputy Sherriff Hector Palma was the lead investigator in this case. Palma interviewed Garcia on the afternoon of the shooting. Garcia confirmed that he was at the tree near the market with Reynoso when a man approached. The man was carrying a shotgun. The man asked Reynoso what he had been saying. The man then shot Reynoso three times. The man then walked back towards the direction from which he came. The man then drove away in a gold color vehicle with a dent on the side of the vehicle. Garcia later identified the type of vehicle.

Garcia also stated he had seen the man three times before. Once the man was in the same vehicle he drove that day, and he was giving a woman named Katia a ride. On one occasion, Garcia and Reynoso were having a yard sale. The man and Katia approached in the same vehicle. Katia asked about a sweater that was for sale. Garcia also gave Palma the name of the discount store at which Katia worked.

Garcia also stated he thought the man was Alejandra Canzales's grandson. Palma confirmed Canzales is Jaime Beltran's grandmother. He obtained two pictures of Beltran. Garcia was not able to identify Beltran as the shooter from the first photograph. In the second photograph, Beltran had a shorter hair style. When that photograph was shown to Garcia, Garcia began weeping and identified Beltran as the man who shot Reynoso. After the shooting, Palma went to Canzales's house to find Beltran, but he was not there.

Palma interview Katia and confirmed she is Beltran's sister. The interview occurred in the vehicle Palma was driving. When Palma asked about Beltran, Katia pointed to Beltran's vehicle which was driving by the discount store. Beltran's vehicle eventually returned to the discount store where it was stopped by law enforcement. Beltran was the only occupant in the vehicle. A shotgun was recovered from inside the vehicle. The shoes Beltran were wearing were also booked into evidence.

Deputy Sheriff Thomas Edgar Grillione interviewed Garcia before Palma arrived. Garcia told Grillione the man with the gun said "God, forgive me" before he shot

3.

Reynoso. Garcia also told Grillione that a person named Kathy knew the shooter and she worked at the discount store in Kerman.

Autopsy results established that Reynoso suffered two shotgun wounds, one to the head and one to the neck, which caused the death of Reynoso. Forensic examination established that some of the tracks at the scene were made by a shoe similar to the ones Beltran was wearing when he was arrested. Forensic examination also established that the shotgun shells recovered from the scene of the murder were shot from the shotgun recovered from the vehicle driven by Beltran.

The prosecutor's closing argument closely mirrored the elements of the crime she was required to prove. Beltran chose to not give a closing argument. The jury deliberated for approximately one hour before returning with a verdict of murder in the first degree as well as a finding that Beltran personally used a firearm to murder Reynoso. The trial court sentenced Beltran to a term of 25 years to life for the murder conviction, and a consecutive sentence of 25 years to life for the firearm enhancement.

## DISCUSSION

Appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 asserting she could not identify any arguable issues in this appeal. By letter dated December 1, 2014, we invited Beltran to inform us of any issues he would like us to review. Beltran responded arguing, in essence, there was insufficient evidence of his guilt. He pointed to the fact Garcia did not identify him as the person who shot Reynoso at trial, the failure of the prosecution to admit the results of gun residue tests, Garcia's repeated assertions at trial that he was intoxicated on the day of the shooting, and the discrepancy between the description of the shotgun given by Garcia (apparently in police reports) and the shotgun found in his vehicle.

None of these arguments have merit. The record conclusively establishes that Garcia was a reluctant and difficult witness who was saying anything in an attempt to avoid testifying at trial. The trial court even noted that it was apparent Garcia was

4.

feigning lack of memory to avoid identifying Beltran as the individual who shot Reynoso. Garcia's feigned lack of memory permitted the prosecution to introduce his prior statements which positively identified Beltran as the person who shot Reynoso, as well as Garcia's statements linking Beltran to the vehicle, to his grandmother, and to his sister. Video surveillance from the market did not show the shooting, but did show Beltran's vehicle leaving the scene shortly after the shooting. The shoe print impression evidence linked Beltran to the scene, and the firearms examiner established conclusively that the shotgun used to kill Reynoso was the same shotgun found in Beltran's vehicle hours after the murder. This is overwhelming evidence of Beltran's guilt.

We note that no evidence was introduced to establish that, presumably, the gunshot residue tests did not show any gunshot residue on Beltran when he was arrested, or that, presumably, Garcia's description of the shotgun given to police differed from the shotgun found in Beltran's possession. This is evidence that would have been admissible and possibly helpful to Beltran, but he failed to elicit such testimony from the witnesses that testified.

Beltran's correspondence suggests he believes that a conviction was possible only if a witness, in this case Garcia, positively identified him as the perpetrator at trial. This is incorrect. The jury is instructed to review all of the evidence presented in deciding if the prosecution has proven a defendant's guilty beyond a reasonable doubt. (CALCRIM Nos. 101, 103, 3550.) We review the entire record, not just the testimony of a single witness, to determine if substantial evidence supports the verdict. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496) The entire record provided overwhelming evidence of Beltran's guilt.

Our independent review of the record did not reveal any arguable issues. The trial court thoroughly advised Beltran of the consequences of choosing to represent himself, and repeatedly advised him this was a serious case and choosing to represent himself was an ill-conceived idea. Beltran assured the trial court that the two hours spent reviewing a

book on procedure rendered him capable of defending himself and winning the case. While the record conclusively establishes that Beltran was unqualified to represent himself, the record also established the trial court had no option but to grant Beltran the right of self-representation guaranteed by the United States Constitution. (*Faretta v. California*, *supra*, 422 U.S. at pp. 818-821.)

Beltran presented virtually no defense, never objected to any evidence offered by the prosecution, and asked only one question of the prosecution's numerous witnesses. Beltran did not make a closing argument to the jury, so they did not know why he thought the evidence was insufficient to prove his guilt. Instead, he virtually sat mute throughout the proceedings likely causing the jury to conclude he had no defense.

The prosecution limited the testimony to admissible evidence (even had there been an objection), and limited her closing argument to the facts established by the testimony and how they related to the elements of the crime. The jury instructions were appropriate for the charges, and sentencing was mandated by law. (§§ 190, 12022.53, subd. (d).) Since the evidence overwhelmingly established Beltran's guilt, we agree with appellate counsel there are no arguable issues in this case.

### DISPOSITION

The judgment is affirmed.